# GARRETT ET AL. *vs.* LYNCH, ADM'R.

[ACTION ON PROMISSORY NOTE—ABATEMENT OF SUIT, ON ACCOUNT OF DEATH, AS TO ONE OF SEVERAL JOINT OBLIGORS SERVED WITH PROCESS.]

1. *Discontinuance; what not equivalent to.*—The death of one of several defendants served with process, in action of debt on a bond or note executed by several persons, and the abatement of the suit as to such deceased defendant, does not discontinue the whole action.

2. *Same; definition of.*—A discontinuance is an *unauthorized* dismissal of the suit as to one of several defendants who have been served with process. The death of one of the defendants, and the abatement of the suit as to him, does not have this effect.

3. *Death of defendant; how suit may proceed after.*—In case of the death of one of the defendants who has been served with process, the court may proceed in the cause, at the proper term, to trial and judgment against the surviving defendants, without further notice of the party who is dead.

APPEAL from Circuit Court of Limestone.
Tried before Hon. W. B. WOOD.

The opinion contains the facts.

W. H. WALKER, and J. N. MALONE, for appellants.
HOUSTON & PRYOR, contra. .

PETERS, J.—This is an appeal from the circuit court
of Limestone county. On the 24th day of March, 1866,
Darius Lynch, as the administrator of the estate of
Thomas Lynch, deceased, brought an action of debt in the
circuit court of Limestone county, against Peter F. Gar-
rett, Benjamin B. Peete, and William H. Garrett, by sum-
mons and complaint. The complaint shows that the plain-
tiff claimed of the defendants, the sum of five thousand
one hundred and sixty dollars, due by bond executed on
the 6th day of December, 1860, and payable twelve months
after date of said bond. It is also alleged that said bond
was the property of said estate, and assets of said deceased.
The summons was properly executed on all the parties de-
fendant on the 28th day of March, 1866.

Afterwards the following judgment was rendered in said
circuit court, to-wit:

"And now, afterwards, to-wit, on the 8th day of April,
1867, being a day of the regular term of said circuit court,
and the trial term of said cause, came the plaintiff, by his
attorneys, and suggests the death of Benjamin B. Peete,
and this suit abates as to him; and the other defendants,
Peter F. Garrett and William H. Garrett, being solemnly
called came not, but made default: It is therefore consid-
ered by the court, that the plaintiff recover against said
surviving defendants the sum of five thousand, one hun-
dred and sixty dollars debt, in the complaint mentioned, to-
gether with the further sum of two thousand, two hundred
and one dollars, and seventy-five cents, damages sustained
by reason of the detention of said debt, besides the costs
in this behalf expended," &c.

This judgment is brought here on appeal by the defend-
ants, Garretts, for revision on the following errors:

"1st. The appellants in this case assign as error the
judgment of the court below.

"2d. That the circuit court erred in rendering judgment
by default against appellants, because the action against
them had been discontinued.

" 3d. By allowing the action to abate as to Benjamin B. Peete, a co-defendant, the whole action was discontinued, and no judgment in that suit could be rendered against appellants."

These assignments of error are based on a statute of this State, found in the Revised Code, which is in the following words, to-wit:

" Suits against joint obligors shall not abate, or be discontinued or dismissed as to any one or more of such obligors, who may die pending the same, but may be revived against the representatives of such deceased obligor or obligors; and the suits may proceed against the survivors of such representatives, but no judgment must be rendered against such representatives until after the lapse of eighteen months from the grant of letters.

" In suits against joint obligors, where one dies pending the suit, judgment may be rendered against the survivors at the trial term, and this suit be continued as to the representatives of the deceased obligor, and the judgments, when rendered, shall be several as to the survivors and the representatives of the deceased, and the satisfaction of one judgment shall be the satisfaction of all the judgments as to principal, interest and damages, except where the same, being against the principal obligor, is or may be assigned by the plaintiff for the benefit of a security under the law of the State, authorizing such assignments of judgments in other cases."—Rev. Code, §§ 2546, 2547 ; Acts 1866-7, p. 699, §§ 1, 2.

There is no repealing clause in the act above quoted. Then it left the remedies which existed before its passage unaltered, and merely added another remedy to them. The practice, as settled at a very early day in this court, allowed just such a judgment as that rendered in this case. *Harrison v. King*, Minor, 364. Besides, this judgment is in conformity with the second section of the act above cited. Here the suit was against joint obligors, and one of them died pending the suit. In such a case, it is the language of the statute, that judgment may be rendered against the survivors at the trial term. That is just what has been done in this instance.

Garrett et al. v. Lynch, Adm'r.

It was doubtful at common law, whether the death of any of the parties to the suit, either plaintiffs or defendants, did not abate the whole action ; and to remove this doubt the 8th and 9th Will. 3, c. 11, § 7, was passed. This enactment permitted the action to proceed in the name of the survivors, whether plaintiffs or defendants, upon a suggestion of the death of the deceased party upon the record. 1 Bac. Abr ; Bouv. 17. This statute was enacted before the declaration of independence, and the separation of the colonies from Great Britain.—1776–77 This was a modification of the common law, which adhered to it and became a part of it, as adopted by our ancestors, in continuing that system, as the law of the land, after the establishment of our government in its present form.—*Patterson v. Winn*, 5 Pet. 241; *Pollard v. Hogan*, 3 How. U. S. 212. This statute was, in substance, at an early day, re-enacted in this State, and this court has, upon several occasions, construed it. And the construction fixed upon it has been, that, where one of several defendants died during the pendency of the suit, the action as to such defendant abated, but was allowed to proceed to judgment against the survivors.—*Rupert & Cassity v. Elston's Ex'r*, 35 Ala. 79, 83. This was the practice until the passage of the act above quoted. This act did not repeal or change the former remedies, but added a new remedy to them. It permitted a revival of the action against the representative of the deceased defendant, and the suit proceeded against him to its final disposition. It was not intended to repeal or embarrass any of the former remedies. They were left as they existed before the enactment of the statute.

The learned counsel for the appellants insist that the practice pursued in this case amounts to a discontinuance at common law. We think otherwise. A discontinuance results from an unauthorized dismissal of a suit against one of several defendants, who has been served with process, and against whom it is competent to proceed without a revival.—*Whitaker v. Van Horn*, January term, 1869, and cases cited. Here the suit could not proceed against the dead defendant, but could only proceed against his representative upon revival. And this revival is optionary with

the plaintiff. He has the remedy existing before this stat-ute. He may permit the suit against the dead defendant to abate, and bring a new action against his representa-tive, or he may revive this suit under the statute. The lan-guage of the statute is positive and peremptory in giving the right of revival in this case, but it is permissive in re-quiring the exercise of the right. It expressly declares that the suit "may be revived against the representatives of the deceased obligor or obligors." It does not require that this right shall be exercised, and that a failure to do so shall defeat the whole action. We do not think that such a con-struction can logically be drawn from the language of the act, nor from its purpose. Then we can not legitimately conceive it to exist. And without this, the position of the learned counsel for the appellants is not sustained. The judgment itself is sufficiently formal.—Archb. Forms.

It is therefore the judgment of this court, that the judg-ment of the court below be in all things affirmed.